## YAZOO–DELTA MORTGAGE CO. v. DICKINSON TRUST CO. et al.

Circuit Court of Appeals, Seventh Circuit. December 22, 1927.

No. 3904.

Mortgages ⬤➡11—Under facts stated, mortgage held valid as against claim of invalidity of mortgagor's title.

Complainant, by its president, conveyed real estate which it held in trust in exchange for other land and personal property. Subsequently the grantee reconveyed to complainant's president, but the deed was lost and not recorded. Later the same grantee mortgaged the property for a valuable consideration to defendant which had no knowledge or notice of the reconveyance, but relied on the abstract of title. Complainant ratified the conveyance by its president, by assuming control of the property received in exchange and selling a part of it. *Held*, that defendant's mortgage was valid as against any claim of complainant, either of invalidity in the original conveyance or because of the unrecorded deed.

Appeal from the District Court of the United States for the District of Indiana.

Suit in equity by the Dickinson Trust Company, as trustee, against the Yazoo-Delta Mortgage Company and others. Decree for complainant, and defendant Mortgage Company appeals. Reversed and remanded, with directions.

Frank C. Dailey, of Indianapolis, Ind., for appellant.

Cassius C. Shirley, of Indianapolis, Ind., and Gath P. Freeman, of Richmond, Ind., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This is a bill in equity brought by appellee Dickinson Trust Company, an Indiana corporation, as trustee for Reeveston Realty Company, to quiet title in it to certain Indiana real estate. Appellant, and Corinne Smith McLemore and Guy B. McLemore, who did not appeal, were defendants. There was a decree quieting title in appellee.

The complaint, filed February 11, 1924, avers that on September 27, 1921, plaintiff, as trustee (appellee), was the owner in fee simple of the real estate described, and sets out the manner in which that title was acquired; that on that date it, by Hiatt, its president, conveyed the real estate to defendant Corinne Smith McLemore; that prior to October 23, 1922, Corinne Smith McLemore and Guy B. McLemore, her husband, conveyed the real estate to Edgar F. Hiatt, who did not record the deed, but lost it; that Hiatt and wife, on February 26, 1923, conveyed to appellee; that Hiatt had no personal interest in said real estate and no right to sell it, except for the use and benefit of the trust; that on October 23, 1922, after the said conveyance by the McLemores to Hiatt, the McLemores made a mortgage to appellant, which was duly recorded. Ignorance of the circumstances under which the mortgage was made, and of the consideration therefor, is averred; but it is averred that appellant had knowledge (a) of the said prior conveyance of the McLemores to Hiatt; (b) that neither Hiatt nor the McLemores owned, or ever had owned, any beneficial interest in said lands and lots at the time the mortgage was executed; (c) of facts and circumstances sufficient to charge it with notice, and put it on inquiry, as to whether the McLemores had any actual interest in the property. The prayer is that the mortgage be decreed null and void, and that the title be quieted as against all defendants.

The McLemores answered, averring ownership of the real estate in question in Mrs. McLemore, and denying all the material allegations of the bill.

Appellant, in its answer, averred ownership in Mrs. McLemore and knowledge of the sale to her by Walter S. Johnson, and denied all of the material allegations of the bill. By way of counterclaim, it was averred that the McLemores, for a good and valuable consideration, executed and delivered to appellant a note for $10,000, secured by a mortgage upon the real estate in question, and a part of the prayer is that it may have judgment for the amount of said note, and that the mortgage may be foreclosed.

Hiatt was president of the Dickinson Trust Company until the latter part of February, 1922, when it failed by reason of his defalcations. Prior to August 3, 1911, one Gardner and Walter S. Johnson acquired title to the real estate in question, and on August 15, 1911, Gardner deeded his interest to Johnson. September 5th, following, Johnson conveyed the property to appellee, as trustee, for the purposes therein expressed, viz.:

"To have and to hold the same in trust unto the said Dickinson Trust Company, trustee, forever, in trust and upon the uses, trusts, and purposes hereinafter mentioned, to wit:

"First. To lay off said real estate into lots, and to plat and to acknowledge the same, and to record the same according to law, and leaving and dedicating streets, alleys, and public ways therein.

"Second. To sell said lots and convey by

trustee's special warranty deed in fee simple to purchasers the lots so laid out and platted as above provided."

The deed was made subject to a mortgage which was fully paid in 1918 and is not here in question. On the date of that deed, September 5, 1911, Johnson and appellee entered into an unrecorded agreement which provided (a) that appellee was to plat the property into lots; and (b) sell and convey the lots by special warranty deed on order of Walter S. Johnson.

October 29, 1915, Johnson and Gardner made a written agreement with Hiatt, providing for the sale of the entire interest of said Johnson and Gardner in the property in question and the assignment of all moneys due on sales of any lots to a corporation known as Reeveston Realty Company. December 8, 1915, articles of incorporation of the Reeveston Realty Company were filed with the secretary of state of the state of Indiana.

December 15, 1915, an agreement was entered into between the Reeveston Realty Company, Walter S. Johnson, Fred C. Gardner, and appellee, which recited the conveyance of September 5, 1911, the agreement of October 29, 1915, and provided:

"That the parties agree, in consideration of one dollar and mutual benefits that Dickinson Trust Company, trustee, shall continue to hold title to said real estate under said trust agreement of September 5, 1911, and that all balances in the hands of said trustee shall be the property of said Reeveston Realty Company."

December 18, 1915, Johnson assigned to the Reeveston Realty Company all interest in the unrecorded contract of September 5, 1911. August 16, 1921, Guy B. McLemore, C. R. Smith, his father-in-law, and the Somerset Plantation Company, entered into an agreement with Hiatt, whereby they agreed to convey to Hiatt the Napanee plantation, containing 2,500 acres, in Washington county, Mississippi, together with the crops and personal property of every kind used thereon, subject to an incumbrance of $336,663.-56, due the Planters' Bank of Clarksdale, Miss.; also to convey in like manner the Somerset plantation of 14,750 acres, with the crops and all personal property, the same subject to a mortgage of $285,000. The personal property, crops, and credits on both properties were free and clear of incumbrances. Hiatt was to convey to Guy B. McLemore, or his assigns, a considerable list of properties, including the property in question, situated in Indiana. That agreement was apparently carried out by the parties and as a part thereof, and on September 27, 1921, Dickinson Trust Company, trustee, conveyed by warranty deed the real estate in question to defendant Corinne Smith McLemore. On the same day defendant Guy B. McLemore, as agent and attorney in fact for his wife, executed a note for $4,027.79 to the Dickinson Trust Company, which was secured by mortgage to it, as trustee, upon five of the lots in question. The note and mortgage were delivered to, and ever since have been in the possession of, appellee.

About January 1, 1922, Corinne B. McLemore conveyed the real estate in question to Hiatt, who gave as consideration therefor his note for $25,000, payable to C. R. Smith. That note was taken by appellant from Smith as security for an indebtedness. It was never paid, and its further history is not material here. Guy B. McLemore did not join with his wife in the deed to Hiatt.

March 6, 1922, the Dickinson Trust Company closed its doors because of Hiatt's defalcations. March 15, 1922, its board of directors, by resolution, appointed one Henry C. Starr, its general counsel, as trustee:

"For the purposes of acquiring title of the property in the name of Edgar F. Hiatt or others belonging to the Trust Company, and which said property is the same which the bank commissioner of Indiana requires to be removed from the assets of the company, and in the event of reorganization the said trustee is authorized, ordered, and directed to prorate the same and the proceeds of the same when turned by him into cash prorate among those contributing stockholders who assist in reorganizing this trust company."

The trust company was reorganized, and the record shows that in the Hiatt matters Starr was acting as trustee for the stockholders who had contributed to the reorganization. The day following Starr's appointment, Hiatt conveyed to Starr, by general blanket deed, all of his property, both real and personal.

Prior to the resolution appointing Starr, the board of directors of appellee knew that Hiatt had sold one Hollingsworth, under a contract, the Somerset plantation, conveyed by the McLemores, and had taken purchase-money notes therefor aggregating $225,000. Starr took possession of those notes, and afterwards took possession of and sold the personal property on the Napanee plantation and other property conveyed to Hiatt by the McLemores.

The mortgage in question to appellant was made October 23, 1922, by the McLemores to secure a note for $10,000, and the consideration was a release of Corinne

Smith McLemore's personal liability on a much larger indebtedness to appellant and an extension of time to her husband and father for the payment of their obligations.

At the time the mortgage was made, the president of appellant saw an abstract of the property mortgaged and was satisfied, he says, regarding Mrs. McLemore's title. He also saw the original conveyance through which she acquired title, and knew of the conveyance of the Napanee plantation to Hiatt. He had a vague recollection of the existence of the contract of August 16, 1921, above referred to. The deed of conveyance from Mrs. McLemore to Hiatt was handed to Starr by Hiatt and was lost by Starr. It was never recorded.

We are of opinion that the note and mortgage from the McLemores to appellant are based upon a good and valuable consideration, and that there is no evidence in the record that appellant had knowledge of the conveyance from Mrs. McLemore to Hiatt. The fact that appellant's president read in a newspaper that the Dickinson Trust Company had closed on account of defalcation of Hiatt is without any probative force in this case.

What the pleader meant, when he said that appellant had knowledge that neither Hiatt nor the McLemores owned or ever had owned any beneficial interest in said lands and lots at the time the mortgage was executed, is not clear; but we will asssume that he meant that appellant had knowledge that those parties had no interest at any time. Other than the fact that appellant's president saw an abstract of the property in question, saw the original deed of September 27, 1921, and had some recollection of the contract of August 16, 1921, appellant had no knowledge concerning the interest of the McLemores in the property in question. It had no knowledge of whether Hiatt had any interest therein or not. The averment in the bill is that:

"On the 27th day of September, 1921, said Dickinson Trust Company, trustee, conveyed each and all of the lots above described to said defendant Corinne Smith McLemore."

That averment must stand as conclusively showing that by its delivery Mrs. McLemore gained title to and did have a beneficial interest in the property. Whether Hiatt had a beneficial interest will be hereafter considered.

The only other allegation of notice is that appellant had knowledge of facts and circumstances sufficient to charge it with notice, and put it on inquiry, as to whether the McLemores had any actual interest in the property. Excluding the matter of the reconveyance by Mrs. McLemore to Hiatt, concerning which appellant had no knowledge, the only other thing which that averment can mean is that appellant, by making inquiries which it was bound to make, would have learned facts which would show that the deed to Mrs. McLemore was voidable. However, it is not necessary to decide that question, because the deed to Mrs. McLemore could only be voided by appellee, Mrs. McLemore, or the cestui que trust. Neither Mrs. McLemore nor the cestui que trust (whoever he might be) was attempting to void the deed. We are only concerned with what appellee can do and has done touching that deed.

Without again reciting the evidence, we deem it sufficient to say that we do not find, either in the averments or the prayer of the bill, anything that indicates a desire on the part of appellee to have that deed voided. The testimony shows that, instead of doing anything to void or rescind the contract of sale of the lots, everything that was done indicated an intention on the part of appellee and its agents to ratify and confirm the deed, and so far as possible get the benefit of whatever value there was in the property taken by Hiatt in trade for the real estate in question.

The amended bill in this case was not filed until two years after Starr's appointment as trustee. A few days after his appointment, he and his agents went down to see the plantations taken by Hiatt in trade, and between that time and the bringing of the suit Starr, his attorney, Freeman, and Cox, the president of appellee, made frequent trips to the South, and were in full possession of all the facts before the amended bill was filed. During those trips they had seen McLemore a number of times, and had asked him to give them a deed for the real estate in question, not because there was anything wrong with the deed of September 27, 1921, but because the deed of reconveyance, which they said had been given to Hiatt, had been lost, and it would not hurt him to give another one. In view of these matters, it needs neither authority nor argument to show that, if appellee had the right to rescind and disaffirm the conveyance of the appellant to Mrs. McLemore, it was lost by the deliberate acceptance by the appellant and its agents of the benefits accruing from that contract, after it knew all the facts, without an effort to void it.

It is averred that Hiatt had no personal interest in the property in question. The

burden of proof thereon was upon appellee. There is much in the record that points to the ownership and control of the Reeveston Realty Company by Hiatt. When asked as to his ownership, he answered: "I would prefer not to answer whether, at the time of the transfer of the said lots to Mrs. McLemore, I owned all of the stock of the Reeveston Company."

As shown above, pursuant to an agreement between Johnson and Hiatt, all of Johnson's interest was assigned to the Reeveston Realty Company. The record of the Reeveston Realty Company shows that it was organized with 250 shares of common stock, of the par value of $100 each; that the incorporators were Fletcher Johnson, a brother of Walter S. Johnson, Walter S. Johnson, and one Otto C. Krone, who were the first board of directors. No shares of stock were issued to them. June, 1922, Starr, who then had a deed from Hiatt for all his real and personal property, took full possession of the Reeveston Realty Company, and for the first time shares of stock were issued, one share to Starr, one to his son-in-law, and attorney, and one to the secretary of appellee. No other certificates were ever issued to any one. Neither Starr, Lemon, nor Freeman, to whom the shares were issued, had any interest in the corporation. So far as appears from the record, Starr's sole connection with these matters was as agent of the stockholders contributing to the reorganization of the appellee, he being charged with the duty of salvaging for them what he could from Hiatt's property. We are constrained to the belief that Hiatt was the owner of the Reeveston Realty Company, and, as such, had an actual interest in the property in question. Neither Fletcher Johnson, nor Krone, nor Jessup, appears ever to have had any interest in the property or in the Reeveston Realty Company.

The record shows that by the unrecorded contract of September 5, 1911, appellee was to make deeds on receipt of orders from Walter S. Johnson. It was also recognized in that contract that Walter S. Johnson was to have a commission on sales of lots. While Johnson subsequently assigned that contract to the Reeveston Realty Company, no other person is anywhere designated as the one upon whose order the deeds were to be made. Walter S. Johnson and his brother, Fletcher Johnson, not only had full knowledge of the proposed conveyance from the appellee to Mrs. McLemore, but knew the terms and conditions upon which it was to be made and aided in the making of the trade. The John-

sons were both in court upon the trial of the case, and appellee could easily have called them to show, if it was true, that Hiatt had no interest in the property, or to show who owned the Reeveston Realty Company.

We are of opinion that the District Court should have entered a decree establishing the validity of the mortgage in question and providing for its foreclosure. The McLemores have not appealed, and the correctness of the decree as to them is not here for review.

The decree is reversed and remanded to the District Court, with directions to proceed in harmony with this opinion.